Before we begin, I apologize. We are late. I know you were here on time. We were discussing some other issues, and we are now ready to proceed with clear heads about this one. So, Ms. Helmick, if you're ready, you may proceed. Good morning, Your Honors. Good morning, Counsel. May it please the Court, I'm here this morning on behalf of Rafael Vargas. Mr. Vargas was convicted after a jury trial of possession of a controlled substance. The first two issues we've raised in our brief really essentially revolve around issues of prosecutorial misconduct. With respect to the first issue, there was a misstatement of facts by the prosecutor. When the prosecutor took advantage of the trial court's ruling on the state's motion in limine to present to the jury a misleading portrait of the facts surrounding the defendant's traffic stop and subsequent arrest. Did the prosecutor say, you'll see the transaction from start to finish, or you'll hear the transaction from start to finish? Or something, or some variation thereof. I believe he said, you're going to see the entire traffic stop from start to finish. And in fact, the jury did see it, didn't they? I don't believe, I would characterize the entire traffic stop from the time the vehicle was stopped until the defendant was removed from the scene. So what they saw was the first part of the video, they played the audio up until the point when the defendant was placed in Officer Melhouse's squad car. They then allowed Officer Dill to testify. They didn't play the audio. They didn't play the audio of anything that happened inside Officer Melhouse's squad car. They played the video of Officer Melhouse searching the vehicle, coming back to the vehicle, dropping his squad car, dropping two bags of cocaine on the squad car. They allowed Officer Dill, the court allowed Officer Dill to testify that when he was told that the car would be searched, that the defendant asked Officer Dill, why are you searching my car if I have insurance and I don't want you searching my car? They didn't allow any conversations after, or any of the video, after these two baggies of cocaine were dropped on the hood of the squad car. Do we know if there was video, not video, but audio of the actual conversations that Officer Dill and the defendant had? Yes. Because we got some breaks in the, we got some breaks apparently when it went off but went back on. Yeah, there were actually two video tracks. There was a video track for the outside. In fact, you can hear Officer Melhouse talking to the two passengers in the car who seemed incredibly intoxicated at the time and they were kind of laughing and joking. There is also an audio of Officer Dill talking to Mr. Vargas when he's trying to get his attention and saying, why are you searching my car? I have insurance. I don't understand why you're searching my car. You don't have my consent. And then there is a separate audio between Officer Melhouse and the defendant when he's asking what's going on. And the officer responds by giving him a Miranda warnings and the defendant expresses surprise and indignation and very upset. And also mentions at the end of that conversation, you know, this is not even my car. This is my mom's car. How am I even guilty of anything if it's not my car? And I don't have anything on me. So there were actually tracks that could have been played from the entire stop, from the stop. So my original question was, how did the prosecutor misrepresent if they actually saw everything but they didn't hear everything? Well, they did not see anything after Officer Melhouse dropped the bags onto the squad car. It's a conversation between Officer Melhouse and the defendant took place after that point. So they did not even see that Officer Melhouse was speaking to the defendant and certainly didn't hear what Officer Melhouse was speaking to, saying to the defendant or what the defendant was saying to him. And the state presented, I think it was misleading actually in two ways. First of all, the prosecutor continuously focused on, harped on the fact that the defendant said this was his car. He was in control of it. He controlled who got in and out of the car. He could control where the car went. He was in possession of everything that was in the car. And then said when the defendant objected to the search, what did that mean? That meant that he knew, he knew that these drugs were going to find in the car. That was why he was objecting to the search. Well, I think that's misleading because when you look at the entire transaction from the time he was stopped until the time the car was removed from the scene, that isn't all he said. He said, I mean to be blunt, you know, he said, what the fuck is going on? That's not my shit. He was very, very indignant about it. I can't believe you found that in my truck. And the jury was led to believe that he didn't say anything on the subject from the way it was presented. I think it's, in this respect, it's similar to people v. Weaver, which is an older case, but it was one where the neighbor of Mrs. Weaver was allowed to say that she came to the house in the middle of the night. She was in a panic. She said there were, her house was on fire. There were two armed intruders in the house. She wasn't allowed to say what she had said to the neighbor. These two armed intruders shot my husband or to give a description. And the Supreme Court said, you know, that's misleading because it led the jury to believe that on this subject, nothing else was said. And I think that's similar to what happened here. In this case, I believe either under the common law completeness doctrine or under Illinois rule of evidence 106, these subsequent statements should have come in. Well, let me stop you there on 106. 106 requires a statement. It's to be a written or recorded statement, correct? Mm-hmm. These statements did not get admitted as a written or recorded statement, right? The initial, it was kind of strange because the initial stop, the audio was played. The audio was played up until the point where Mr. Vargas was put in Officer Melhouse's squad car. The judge did not allow the audio of his conversations with Officer Dill to be played because the judge thought it would be too hard to take the one comment that it was his car. He kept saying, why are you searching my car? The judge thought it would be too hard to take that out of context and not admit in the other evidence. Well, you would admit, correct, that 106 applies to written or recorded statements. Right. And there were recorded statements that were just not played for the jury. There was a recording of the statements between Officer Melhouse and the defendant on a separate track on the video. So they were recorded statements, and defense counsel asked essentially that they all be played. If you're going to play part of it, you should play all of it. So the state made a motion initially to not put in that track but to just allow the testimony of Officer Dill? Right. Okay. So is this about how the state presents the case, in which they have some discretion, or is it about compliance with 106? I think it's about compliance both with Rule 106 and with the completeness doctrine because the state presented a selective view of what had happened at the time of the defendant's stop and arrest. And it could either be considered as one comprehensive transaction, which would bring it under the common law rule, or I suppose you could treat it as there's a conversation between the defendant and Officer Melhouse, there was a conversation between Officer Dill and the defendant, and then there was another conversation between Officer Melhouse and the defendant. But under LNI Rule of Evidence 106, even if you consider these as three separate conversations, I don't think that's appropriate. I think it's more like this Court's decision in People v. Bohan, there were three separate conversations a week apart, and those were treated as one comprehensive conversation about the same subject matter because it covered the same subject matter of what was this homicide victim's state of mind at the time. Was she ingesting drugs because she was suicidal or had the defendant given her these drugs that caused her death? Did the jury ever learn through the evidence that the car belonged to the defendant's mother? No. Okay. That was part of what he had said to Officer Melhouse in the final conversation. Defense counsel did try to ask, I believe it was Officer Melhouse, if he had run the registration and to whom was it registered, and objection to that was sustained. And defense counsel widely did it under the completeness doctrine. Right. Right. Yes, because the prosecutor kept insisting, which again goes, I think, to the second issue, the misstatement of the law. The prosecutor kept insisting that the only thing that was relevant was he identified this vehicle as his car. And then went on during closing argument to say, pretty much wrote out the idea of knowing possession of the drugs or intention to exercise control over the drugs and told the jury, both in the opening and the rebuttal closing arguments, this is a case where the defendant says this is his car. What does that mean? He's the one that has the right to control who goes in and out of the car. He has the right to control what's in the car. He has control over the things that are in the car. And ends with saying, so what we have is the defendant in charge of his own vehicle with cocaine in it. That's the evidence. Ladies and gentlemen, I submit to you, that is proof beyond a reasonable doubt. Was the defendant in possession of that car? Was he in possession of the items in that car? Could he include and exclude people? And therefore, was he in possession of the cocaine? And the answer to that question is yes. And therefore, we've met our burden. Was there any issues raised with regard to the accuracy or propriety of the jury instructions? Of the jury instructions? No. So the jury was properly instructed. The jury was instructed that the defendant, they had to show the defendant knowingly possessed. But the problem was, well, first of all, this court, I think in Carvajal, Peoples v. Carvajal, the third district in Peoples v. Burnside, has said the fact that the jury might be correctly instructed doesn't always overcome a misstatement of the law by the prosecutor. The other thing is this is a situation where the prosecutor is trying to say knowingly relates to was he in knowing possession of and control over the car? And nobody was disputing that he was driving the car, that he was in control of the car. So I think it's misleading to the jury because they're led to believe, oh, what we have to decide is was he in knowing possession and knowing control of the car? And once we find that, then we can find that he was in possession and control of the drugs for purposes of possession of a controlled substance. So it was misleading in that degree as well. Now, the defense counsel did not object to the closing arguments, but with respect to the she did preserve the issue with respect to the completeness doctrine in Rule 106. She didn't preserve the issue, didn't object to the misstatements of the law, but we've asked that this court consider it under the plain error doctrine. And I think we can say that this was a closely balanced case, even without regard to the statements that we think should have been included under the completeness doctrine. One of the most important things is these drugs, these two packets of drugs, small packets and baggies of drugs, were found in locations that were accessible to the passengers in the car. One of them was found under the front passenger seat. The other one was found in the center console of the car, with the rear passenger being pretty much directly behind the center console. No indication the defendant had ever looked in the center console. It's also occurred to me that it's a little strange if you're in possession of two baggies of cocaine as the driver, that you're going to keep one under a front passenger seat and one in a console. It doesn't seem like an appropriate way for someone in possession of drugs to be throwing them, tossing them around the car. From what the jury saw, they did know that there were two passengers in the car, correct? They knew there were two passengers. And they probably heard that from the testimony of one or both of the officers also. Right, and that was on the video that they saw the two passengers. What did the defense argue to the jury in closing arguments? The defense argued that they had- Perhaps it wasn't his, maybe. Yeah, I mean, they argued that they weren't his drugs and that there were two passengers in the car, that the officers didn't investigate, they let them leave. The video shows there was a period of about two minutes when Mr. Vargas was backed by Officer Melhouse's car, and nobody was near the defendant's car or the car he was driving, and the windows were tinted, so there was a period certainly when these two passengers could have disposed of the drugs. I think it's also relevant that no drugs were found on the defendant. There's no indication he was under the influence of anything. These two passengers were intoxicated, and it was pretty clear they were intoxicated, but no indication that he was under the influence. And he certainly didn't make any expressive admissions of knowledge, which leads back to the first issue, far from it. He made all these adamant denials of guilt, and it happened at the same time, to the same officers, covered the same subject matter. So the jury didn't really get a complete picture of this. All in all, our position is he didn't get a fair trial. We ask that his conviction be reversed and that he receive a new trial. I think my time is up. Justice Hudson? Thank you. You have an opportunity for response. Thank you. Mr. Jacob. Good morning. Please support from counsel. Picking up on what Ms. Skelnick said, I would be loath to characterize the first issue as one of prosecutorial misconduct. It clearly is an issue, as the trial court found, that separate statements to a different individual were not admissible under the completeness doctrine. Because of the time? Because they were separate statements? Because they didn't relate to the same subject matter? They didn't relate to the same subject matter, and they were nearly contemporaneous in time. They were just made to separate officers. Why would they relate to the same subject matter? Her point is he says his car, but the fact that somebody else may have owned the car and would have access to the car, why is it a different subject? I didn't believe I did say it was a different subject. Unrelated to the earlier conversations, I think you said. What was your point? My point is that it was made to two different officers. There was unity as to time and place and perhaps subject matter, but not unity as to the people that they were made to. Was that a requirement in that a case law has to be made to the same people? At common law, I cited in the brief, people versus Harmon, which is somewhat similar where after arrest, the defendant made some exculpatory statements at the police station to an officer other than the arresting officer. And this court, although it's 1984, did find that the hearsay exception didn't apply because the statements that were offered, those first officer statements, were not a part of the conversation. Sorry. The statements that the defendant tried to get in were not part of the conversation that the statement produced. In that case, what purpose was it being admitted for? Is it an exception in hearsay or because of the completeness? In the case you're citing, what was it being offered for in that case? Completeness. Okay. So that's the state's position. But to say it's prosecutorial misconduct is a threat. Well, is it your position, then, that in order to defeat a completeness doctrine argument by a defendant at trial that we just keep having him talk to a different police officer? Can't we consider them as one entity? Can't the defendant say, excuse me, I want to keep talking to that guy over there so that this is one continuous conversation? That could occur. In this case, however, the court specifically found that the pre-arrest and post-arrest statements were distinct. The pre-arrest statements being made to Officer Melhouse. But you've told me that you do believe they are the same subject matter. So the only difference here is you said it was made to two different police officers. Again, the completeness doctrine would have to, the exception under the completeness doctrine, would allow the statement to come in if it explained or otherwise clarified the statement that was elicited. In this case, the defendant denying that he had the drugs, that separate statement that that's not even my car, that's my mother's car, doesn't sound right. It's my car as opposed to anybody else here, but then later wanting to say it's my mother's ownership. And again, ownership doesn't even get to the issue of the constructive possession of the drugs that were found. But doesn't that explain his statement, which is the issue? It's what he meant by the word his, mine. He could. My car could have implied ownership, and he's clarifying later on he didn't own it. Certainly. My question about 106, if there was a recording of the conversation in the back of the police car, but instead the state wanted to offer the live testimony of the officer, can the state circumvent 106 by purposefully doing that, or can we still consider that there is a recording of that conversation and still let it fall within 106? I believe under 106 it would have to be actually offered that the videotape statement or video recorded conversation would have been offered by the state for the remainder to come in. The fact that the judge in this case decided that it would be too confusing and would rather allow Officer Dilk to testify about the statements that the defendant initially made, I think should warrant the court not considering that recorded statement under 106. What in particular was confusing about it? I believe the court felt that it would be confusing to go back and forth between Officer Dilk's testimony and the recorded statement. Again, the Weaver case that Ms. Skellnick cites, in that case all conversations were to a neighbor. So, again, there's a unity of person, although they might have been on a different subject of what the armed men allegedly did in the house. They were all to the same person as in Bowen. They were all to the victim's friend. So the court has made this distinction under the completeness doctrine that unity of time, place, and person is a distinction, as this court did. What about the potential, or you've argued it's not a misstatement, but the misstatement of the law? As to the second issue, it's interesting that both, I don't think it's in dispute that the prosecutor initially did acknowledge that the state at all times has the burden of proving knowing possession. He then attempted to explain the law of constructive possession and made those statements that the defendant now complains of without reference to the knowing element. So he argued, as Ms. Skellnick said, as a query to the jury, was the defendant in possession of the car? Was he in possession of the items in that car? Could he include and exclude people, and therefore was he in possession of that cocaine? And the answer to those questions is yes. And therefore, ladies and gentlemen, we have met our burden. The focus is clearly on the possession element, not the knowledge element. But it was not air to argue that the defendant was in possession. In fact, defense counsel responded in her argument, picking up on that very same term, saying the prosecutor had laid out the ways in which the state had not proven to possession, but no mention of knowing possession. And so it's the state's position that this one statement, although there were several that omitted the knowing possession, considered with both the defense counsel's argument, which was much more far-ranging and didn't zero in on the lack of knowing possession, that that was actually somewhat curative, although I use that term loosely, that the jury was not misled if we consider the entirety of the argument in context. Because the court leader instructed. That's what I asked Ms. Kellner, but she has a point. The cases say that if there's a violation, a closing argument, the law is misstated. I say this is particularly egregious, but does the judge giving the proper instructions, ipso facto, always cure an improper closing argument? Not always. But unlike the Burnside case that Ms. Kellner cited, there was no evidence that the jury was confused by the instruction, and defense counsel didn't actually object to the comments. As I said, defense counsel echoed those very same themes in her closing argument. But I mean, she didn't say, well, hey, this is Garza, it must have been his stuff. I'm sure she didn't say that, but it could be inferred from the prosecution's statements, because they were a little bit conflicting, that his car, his stuff. She clarified, in fact, that the issue wasn't whether or not he was in possession of the car. The issue was whether or not he knowingly possessed the drugs that were found within the car. It's the state's position that with considering the prosecutor's comments in light of the defense counsel's comments, and with the curative instruction given by the court, there was no reasonable certainty that the jury reached this guilty verdict based upon the comments by the prosecutor. Anything else you'd like to add? I would yield my time if there are no other questions by the court. I would just ask that the court affirm the defendant's conviction on all charges. Although you've conceded the DNA count, correct? Yes, correct. Thank you. Thank you. I want to ask you a quick question. Sure. A little bit of a colloquy with Justice Hutchinson. Rule 106 reads, when a written or recorded statement or part thereof is introduced by a party, then at that point the adverse party may require the introduction of the rest of the statement. And 106 clearly did not incorporate the common law doctrine of both oral as well as written and recorded. So the way it is written, it's interesting. So if the party strategically, in this case the prosecution, introduces a written or recorded statement, how would you be able to introduce another form beyond that? Well, I would dispute that that was what the prosecutor did strategically because the prosecutor Well, that's so we don't know the motives. No, but I mean I You know, where it literally talks about a written or recorded statement being introduced by a party first. The prosecutor in this case, at least my reading of the pretrial arguments, the prosecutor actually wanted to get in both all of the video up to the point where Officer Dill spoke to the defendant and wanted to get in the conversation between Officer Dill and the defendant, the recorded statement. And it was the judge who said, I think it's going to be too confusing to put the whole statement in because you can't pull out that one statement you want to introduce where he said, that's my car, I don't want you searching my car. So it wasn't really a situation where the prosecutor was only trying to get it in through oral testimony. Let's assume this real quickly and I don't want to spend all your time on this. In the case in chief, the state calls the police officer, testifies to a statement. Okay. And then later on, the defendant gives a written report statement directed to that subject matter. You're saying under 106, that can come in even though the adverse party didn't introduce a writing or recording, right? Right, because it is a recorded statement that they were introducing. They were introducing the recorded statement through the oral testimony of the officer, but it was a recorded statement that was what was being testified about. So then you're saying the defendant would have to write under 106 to introduce some written or recorded statement, even though the adverse party introduced nothing in writing. That explains that, which is unfair. And I think, again, I think this is really even under people, the Patterson says you can introduce under the complete common law completeness doctrine, what was said on the same subject at the same time. What would be the purpose in your mind of having 106 in the first place? Because your interpretation, you would never need it. What was the purpose of 106? Well, if there were only, if the statement was not written down and was not recorded, if it was only an oral statement that the officer heard from the defendant or made to the defendant, we wouldn't have any written or recorded statement to introduce. And 106 also allows for statements that were made at different times if you want to consider this as three separate conversations. I don't think it's really appropriate to consider this as three separate conversations because it's all part of the same traffic stop and stop and arrest. And the state is presenting it to the jury as this is all the defendant said on the subject. Why did he object? What was he doing? He was objecting because he knew the drugs were in there. Well, the subsequent statements he made under even the common law completeness doctrine show that he's not necessarily implicitly admitting his guilt. He's saying, I don't know anything about these. So I think it's necessary even under the common law completeness doctrine to give some meaning and context to what the state is using as an implied admission of guilt. Well, your position certainly has some intuitive appeal. Well, I hope it is. It's beyond that. I hope it is legal. Yes. And then the prosecutor says, outlines the evidence, he's concerned about somebody searching his truck. If you're not breaking the law, why are you concerned about someone searching your truck? Why are you concerned? What would you be concerned? Why would you be concerned if an officer was going to go through your vehicle? And then down to the last sentence. So what we have is the defendant in charge of his own vehicle with cocaine in it. That's the evidence. And you're saying if, I mean, he still may have argued that. Right. But if you have the video of him being emotive and this isn't even my car. Right. Plus the fact that this is his mother's car. I mean, that's certainly another reasonable explanation as to why he's going through all the things in my, I have insurance. Why are you searching through my mother's car? The prosecutor even said that everything in that console is his and all belongs to the defendant. There wasn't any evidence that everything in the console was his. It was his mother's car, which the jury was never told. I don't think what he argued in closing was any distinction between what was argued in Burnside where the prosecutor said, he lives in this house, he's a felon, he's not allowed to have any weapons, so that's against the law. So he was using the fact that the defendant's control over an area as proof of his knowledge of the presence of the weapon. I think that's exactly what we have here in the prosecutor's argument. Thank you. All right. Again, thank you for indulging us as we were a little late getting to you. We appreciate your courtesy and we also appreciate your evidence here today. Thank you very much. We will issue a decision in due course and we are now going to stand.